Louis E. Jungbauer,
Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
White Bear Township, MN 55127

ATTORNEYS FOR PLAINTIFF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIO JACKSON, | Civil No. 1:16-cv-06837 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY DEMAND** |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | |
| Defendant. | |

**COMPLAINT**

**The Plaintiff, MARIO JACKSON**, through his attorneys—Yaeger & Jungbauer Barristers, PLC, and The Law Office of John Bishof—for his claims and causes of action against the above-named Defendant **UNION PACIFIC RAILROAD COMPANY**, states as follows:

**PARTIES AND JURISDICTION**

1. Defendant Union Pacific Railroad Company (Union Pacific) was and is a corporation organized and existing under the laws of the State of Delaware, was and is engaged as a common carrier in interstate commerce, and was and is operating an interstate system of railroads in and through the several states, including in the State of Illinois and Cook County, within the geographic area of the Northern District of Illinois.

2. That at all material times, Plaintiff Mario Jackson (Jackson) was and is a resident of Cook County, Illinois.

3. That at all material times, Union Pacific was and is an interstate carrier by rail and was and is engaged in interstate transportation and commerce.

4. That at all material times, Jackson was and is in the employ of Union Pacific and as such was working and engaged in the furtherance of Union Pacific's interstate commerce.

5. The jurisdiction of the Court in this matter is based upon the Federal Employers' Liability Act, 45 U.S.C. Sections 51-60.

6. The Court has jurisdiction over Union Pacific pursuant to the Federal Railway Safety Act (FRSA), 49 U.S.C. § 20109(a) and (c), and this action is timely commenced. Jackson filed a complaint with OSHA within 180 days of being assessed discipline. After waiting more than 210 days, and without a final decision from the Secretary of Labor, he exercised his right to remove the case from OSHA and refile in United States District Court. There is no allegation or proof that the delay was because of bad faith on the part of Plaintiff.

7. Jurisdiction over the multiple claims is appropriate because they arise from the same set of facts. Jackson's discipline arose from the same incident that gave rise to his FELA claims.

## THE COLLISION

8. That on or about July 8, 2013, Jackson was engaged in the scope and course of his employment as a freight conductor at Union Pacific's Proviso rail yard, located in Northlake, IL.

9. That he and his fellow crew member, locomotive engineer Ed Burton, were ordered to bring railroad engines to another location that morning. While making their way through the Yard, their locomotive had to come to a stop due to broken rail.

10. While Jackson and Burton waited for permission to continue moving, another Union Pacific freight train was moving nearby. Its conductor failed to properly line the switch for its intended route, instead causing that train to proceed on the same track as Jackson and Burton's engine.

11. When Jackson and Burton saw the train quickly approaching, they both exited the rear door of the engine cab as quickly as possible, and hurried along the locomotive's catwalk, towards the rear of the engine, hoping to have time to climb down the stairwell and exit the train before the impending collision.

12. Unfortunately, they didn't make it off the engine before the other train crashed into it.

13. The impact of the other train colliding with their engine knocked both Jackson and Burton off balance, Jackson being caused to lose his balance alongside Burton, striking his back on the locomotive handbrake, the twisting movement and force of hitting the handbrake causing immediate pain to Jackson's back and other parts of his body.

14. Jackson was taken to the Gottlieb Hospital emergency room, in Melrose Park, IL, where he underwent initial examination and treatment, including film scan studies, and was then released, with instructions to follow up with his own doctors.

## COUNT I: FELA , CFR VIOLATIONS

15. The collision and resulting injuries to Jackson were caused, in whole or in part, by Union Pacific's negligent violation of the Federal Employers' Liability Act and violation of applicable Code of Federal Regulations, including:

    a. The negligent failure to provide Jackson with a reasonably safe place to work;

    b. The negligent failure to instruct the 'other train's' conductor in how to properly align the railroad switch in question;

    c. The negligent failure in not providing Jackson and Burton with working engine cab radios / method of communication with the Yard tower and nearby train traffic;

    d. Violating the applicable Code of Federal Regulations, including but not limited to, 49 CFR 218 and 49 CFR 220;

    e. The negligent failure to properly train its other employees;

    f. The negligent failure to warn Jackson of the oncoming train;

    g. And other negligence and regulatory violations to be determined as discovery continues.

16. That as a result of the Railroad's aforesaid negligence and CFR violations, Jackson suffered serious physical and emotional injury, including to his neck, spine, and low back, requiring him to undergo a lengthy regimen of physical therapy, endure multiple injections, and other attempts to relieve his physical pain.

17. That as a further result of the Railroad's aforesaid negligence and CFR violations, Jackson underwent a transforaminal lumbar interbody fusion at his L4-5 level.

18. That his injuries from the aforesaid negligence and CFR violations has caused permanent physical and emotional damage to Jackson, which has in the past and will in the future cause physical and emotional pain and suffering, requiring continued care and treatment, at an expense to be proven at trial.

19. That the Railroad's aforesaid negligence and CFR violations caused Jackson to lose wages and benefits in the past, and will continue to cause a loss or diminution of his earning capacity in the future, including fringe benefits, in amounts to be proven at trial.

20. That as result of the foregoing claim, Jackson seeks judgment against Union Pacific for his aforesaid injuries and damages, in an amount to be proven at trial, plus court costs, and any other permissible relief.

## COUNT II: FRSA / WHISTLEBLOWER CLAIM

21. Jackson restates and incorporates Paragraphs 1 through and including 12 above.

22. On or about July 8, 2013, Jackson was instructed by his treating physician not to return to work at Union Pacific until his body had healed sufficiently from its injuries. This order was communicated to Defendant.

23. On or about July 12, 2013, Jackson informed Union Pacific that he had retained counsel and was exploring his options for a potential claim under the FELA.

24. Between July 8 and July 16, 2013, Union Pacific called Jackson and attempted to have him report for duty. Jackson did not report in an effort to comply with his physician's orders.

25. On or about July 16, 2013, Union Pacific sent Jackson a notice of investigation alleging a violation of the railroad's attendance policy. The investigation was held August 20, 2013.

26. On or about August 27, 2013, Jackson received a letter stating that he was found to have violated Union Pacific's attendance policy. He was assessed discipline in the form of a First Offense Violation that was noted on his permanent employee record.

27. Jackson engaged in one or more protected activities under the FRSA, including but not limited to:

    a. Reporting a personal injury;

    b. Following a physician's treatment plan;

    c. Other protected activities.

28. Defendant committed an adverse employment action against Jackson when it assessed him a First Offense Violation and recorded said violation in his employee record.

29. One or more of Jackson's protected activities was a contributing factor in Defendant's decision to commit an adverse employment action. The following circumstances, alone or in combination, demonstrate or raise that inference:

    a. Plaintiff's physician's orders that he not return to work until his body had healed sufficiently from its injuries;

    b. The close temporal proximity between the incident and the adverse employment action;

    c. Other circumstances.

30. In assessing discipline, Union Pacific treated Jackson differently than other employees in similar situations who did not engage in protected activities.

31. As a result of this adverse employment action, Jackson suffered emotional distress and other damages.

**WHEREFORE** Plaintiff Mario Jackson prays for the entry of a judgment in his favor against Defendant Union Pacific Railroad Company for an amount in excess of the jurisdictional minimum of this Court, together with such interest, costs, and other damages as allowed by law.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**YAEGER & JUNGBAUER BARRISTERS, PLC**

/s/Louis E. Jungbauer
4601 Weston Woods Way
Saint Paul, MN 55127
Telephone: (651) 288-9500
Email: ljungbauer@yjblaw.com

-AND-

John S. Bishof
Law Office of John S. Bishof
101 N. Wacker Drive, Suite 200
Chicago, IL 60606
Telephone: (312) 630-2048
Email: jsbishof@jsblegal.com